**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3105

_____

UNITED STATES OF AMERICA

v.

FELIX RESTITULLO,
                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 15-cr-00394-001)
District Judge: Hon. William H. Walls
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 25, 2019
_____

Before: GREENAWAY, JR., PORTER, and GREENBERG,
*Circuit Judges*

(Filed:  November 27, 2019)

_____

OPINION*
_____

---

    * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PORTER, *Circuit Judge*.

Felix Restitullo was convicted of one count of production of child pornography, in violation of 18 U.S.C. § 2251(a), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The District Court sentenced him to a term of imprisonment and ordered him to pay $312,000 in restitution. Restitullo raises four issues on appeal. The first challenges the denial of Restitullo's motion to suppress. The next two concern evidence that the District Court admitted at trial, and the last one involves the amount of restitution. But all his claims lack merit, so we will affirm.

**I**

Restitullo lived in an apartment in Jersey City. He possessed an extensive child pornography collection, which included 3,114 pictures and 354 videos. Restitullo stored his collection on two hard drives, a thumb drive, a memory card, and DVDs.

He also produced child pornography. In creating his pornography, Restitullo abused his six-year old niece. His niece told a psychologist that he engaged in sexual acts with her. She described those sex acts in graphic detail to the psychologist.

The police soon closed in on Restitullo. In March 2014, allegations surfaced that Restitullo abused two minors. The police interviewed the minors. After the interviews, the police decided to arrest Restitullo. Officers arrived at his apartment to arrest him; Restitullo was not present, so the officers secured the apartment. An officer began drafting a warrant application to search the apartment.

That same day, the police arrested Restitullo. The police began interrogating Restitullo, but he invoked his right to counsel. During a transfer to a different cell,

2

Restitullo's interrogation was reinitiated. During the second interrogation, Restitullo consented to a search of his apartment and made other statements. Because of Restitullo's consent, the police searched his apartment without ever filing the already-drafted warrant application. During the search, the police recovered additional evidence of Restitullo's criminal conduct.

Soon after, the government indicted Restitullo. Before trial, Restitullo moved to suppress both his statements made during the second interrogation and the evidence from his apartment. The District Court suppressed Restitullo's statements from the second interrogation, but it declined to suppress the evidence from Restitullo's apartment. To admit the evidence, the District Court relied on the so-called "inevitable discovery" doctrine.

After a seven-day trial, the jury found Restitullo guilty. Restitullo raised many objections during trial, but only two of his objections under Federal Rule of Evidence 403 are at issue. First, he objected to the psychologist testifying about the abuse of Restitullo's niece. Restitullo also objected to the admission of the second of two videos from his collection of child pornography.

Restitullo was sentenced to 480 months' imprisonment. The government requested that he pay $312,000 in restitution: $150,000 to his niece and $9,000 to each of the other eighteen victims identified in his pornography collection. The District Court accepted the government's recommendation, ordering Restitullo to pay $312,000 in restitution. Restitullo appeals.

**II**

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

**III**

Restitullo appeals the District Court's decisions in three ways. First, he complains that the District Court erred by denying his motion to suppress. Second, he challenges two of the District Court's Rule 403 rulings. And lastly, he asserts that the District Court's restitution award is excessive. For the following reasons, none of his arguments will prevail.

**A**

First, Restitullo challenges the District Court's denial of his motion to suppress the evidence from his apartment. The District Court concluded that the police violated Restitullo's rights by interrogating him after he invoked his right to counsel.[1] But the District Court still admitted the evidence from Restitullo's apartment under the inevitable discovery doctrine. We review the factual findings in a denial of a motion to suppress for clear error, and we exercise plenary review over a district court's application of law to fact. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. The Fourth Amendment "contains no provision expressly precluding

---

[1] The District Court's decision under *Edwards v. Arizona*, 451 U.S. 477 (1981) to suppress Restitullo's statements is not at issue.

4

the use of evidence obtained in violation of its commands." *Arizona v. Evans*, 514 U.S. 1, 10 (1995). But the Supreme Court's "decisions establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009) (citation omitted).

But "that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." *Id*. at 140 (citation omitted). In other words, exceptions to the exclusionary rule exist. *See, e.g.*, *Davis v. United States*, 564 U.S. 229, 244 (2011) (noting the existence of "established exceptions to the exclusionary rule").

One such exception is the "inevitable discovery doctrine." *Nix v. Williams*, 467 U.S. 431, 444 (1984). "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means … then the deterrence rationale has so little basis that the evidence should be received." *Id.* at 444; *see United States v. Vasquez De Reyes*, 149 F.3d 192, 195 (3d Cir. 1998). "The rule so applied permits the [district] court to balance the public interest in providing a jury with all relevant and probative evidence in a criminal proceeding against society's interest in deterring unlawful police conduct." *Vasquez De Reyes*, 149 F.3d at 195 (citation omitted).

"The [g]overnment [may] meet its burden by establishing that the police, following routine procedures, would inevitably have uncovered the evidence." *United States v. Stabile*, 633 F.3d 219, 245 (3d Cir. 2011) (internal quotation marks and citation

omitted). "The inevitable discovery analysis focuses on historical facts capable of ready verification, not speculation." *Id.* (internal quotation marks and citations omitted).

The District Court based its decision to admit evidence from Restitullo's apartment on three factors. First, police drafted the warrant application before Restitullo's interrogation began. Second, "overwhelming" probable cause existed to search Restitullo's bedroom based on the interviews of his two purported victims—interviews that occurred even before officers took Restitullo into custody. And third, the police secured Restitullo's apartment before Restitullo's interrogation. Securing the apartment thus prevented any possible removal of the evidence.

We are satisfied that the inevitable discovery doctrine applies here. In *Stabile*, we held that police would have inevitably discovered multiple hard drives despite receiving legally defective warrants. 633 F.3d at 245–46. We predicated our conclusion in *Stabile* on two findings. First, we found that the police there would have inevitably discovered the evidence using routine police procedures. *Id.* at 246. And second, we found that "little deterrence benefit [existed] in punishing the [g]overnment." *Id.* (citation omitted).

The police here would have inevitably discovered the evidence of Restitullo's crimes using a routine police procedure—a warrant supported by probable cause. *See* U.S. Const. amend. IV. Before Restitullo's interrogation, the police had found more than enough evidence to support probable cause to search the apartment—more than enough to receive a lawful warrant for that search. Police discovered the evidence independent of Restitullo's interrogation, and even before Restitullo's interrogation, they had already drafted a warrant application to search Restitullo's apartment. Police had also secured the

6

crime scene before the interrogation. Thus, the record shows that police would have inevitably discovered the evidence in Restitullo's apartment using routine police procedures.

What's more, "little deterrence benefit [exists] in punishing the [g]overnment" here. *Stabile*, 633 F.3d at 246 (citation omitted). An officer had properly prepared a warrant application *before* interrogating Restitullo. The basis for the warrant was information received by police independent of Restitullo's interrogation. And perhaps most importantly, the only reason that the police did not submit the warrant application is because Restitullo consented to the search. Under these circumstances, little deterrence may be gained by reversing the District Court. *See Stabile*, 633 F.3d at 246; *cf. Nix*, 467 U.S. at 443–44; *Vasquez De Reyes*, 149 F.3d at 195.

Thus, under our precedent,[2] we hold that the District Court committed no error when it admitted the evidence taken from Restitullo's apartment.

---

[2] To be clear, we have not created a bright-line rule ensuring that the inevitable discovery doctrine will apply based on the expected issuance of a warrant. But many of our sister circuits have done so. *See United States v. Christy*, 739 F.3d 534, 541 (10th Cir. 2014); *United States v. Are*, 590 F.3d 499, 507 (7th Cir. 2009); *United States v. Souza*, 223 F.3d 1197, 1204–05 (10th Cir. 2000); *United States v. Cabassa*, 62 F.3d 470, 473–74 (2d Cir. 1995); *United States v. Ford*, 22 F.3d 374, 378–80 (1st Cir. 1994); *United States v. Lamas*, 930 F.2d 1099, 1104 (5th Cir. 1991).

To decide this case, we ultimately need not adopt a rule for whether the inevitable discovery doctrine applies based on a warrant's expected issuance. The reasoning applied by most courts—ones that would apply the doctrine here—coheres with our prior decisions. *See Stabile*, 633 F.3d at 245–46 (finding that "proper execution" of warrants "would have yielded evidence of child pornography"); *see also United States v. Herrold*, 962 F.2d 1131, 1143 n.13 (3d Cir. 1992) (Greenberg, J., concurring).

**B**

Next, Restitullo complains about two decisions by the District Court to admit evidence under Rule 403. "We review a district court's decision to admit or exclude evidence for abuse of discretion, and such discretion is construed especially broadly in the context of Rule 403." *United States v. Sussman*, 709 F.3d 155, 173 (3d Cir. 2013) (citation omitted). "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"A district court is generally afforded broad discretion on evidentiary rulings due to its familiarity with the details of the case and its greater experience in evidentiary matters." *United States v. Finley*, 726 F.3d 483, 491 (3d Cir. 2013) (internal quotation marks and citation omitted). Thus, a district court is best positioned to make a call under Rule 403, which often "requires an on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (internal quotation marks and citation omitted).

"[I]f it is clear that the district court did in fact conduct a Rule 403 analysis, then we will uphold the ruling unless the district court has abused its discretion." *Finley*, 726 F.3d at 491 (internal quotation marks and citation omitted). "An abuse of discretion occurs only [when] the district court's decision is arbitrary, fanciful, or clearly unreasonable—in short, [when] no reasonable person would adopt the district court's

8

view." *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010) (internal quotation marks and citation omitted).

**1**

Restitullo's first Rule 403 objection related to the testimony of his niece's psychologist, Dr. Leah Schild. Dr. Schild testified about specific sexual acts taken by Restitullo to abuse his niece.[3] On appeal, Restitullo complains that Dr. Schild's testimony lacked probative value because the government charged him with production and possession of child pornography, and not molestation. Even if the testimony were probative, he argues, it confused the jury because the government did not charge Restitullo with sexual assault. Restitullo also claims that the testimony inflamed the jury and therefore unfairly prejudiced him.

Restitullo's complaints are unpersuasive. The District Court stated that Dr. Schild's testimony about Restitullo's niece would not "confuse the issue because … the government's case is that [Restitullo], in developing these photos of child pornography, used[ his niece] as his subject and in doing so assaulted or abused or touched the subject of those pictures." SA696–97. We agree with the District Court that Dr. Schild's testimony would not confuse the jury and that it had probative value. Because the testimony at issue is relevant to the crimes charged in the indictment, the District Court

---

[3] The government moved in limine for the admission of Dr. Schild's hearsay testimony. The District Court granted the motion. Restitullo's appeal does not challenge the District Court's decision on the motion in limine.

did not abuse its discretion by reaching either conclusion. *See Green*, 617 F.3d at 239 (citation omitted).

The District Court found that Dr. Schild's testimony would not unduly prejudice Restitullo. To be sure, the District Court acknowledged that Restitullo had a right "to avoid unfair inflammation or inflammatory aspect[s]." SA698. But the District Court ultimately concluded that "so far nothing ha[d] been depicted that [wa]s unfair. It may well be inflammatory because [that is] the nature of the crime. The crime itself[ ] … is putrid." *Id.* And "when [a defendant] [is] messing with a young child of [five] or [six] years old and do[es] what he is alleged to have done, he cannot be heard to complain that [it is] not clean." *Id.* at 698–99. The District Court found that Dr. Schild's testimony would not unduly prejudice Restitullo, and we cannot say that the District Court abused its discretion here. *See United States v. Repak*, 852 F.3d 230, 248 (3d Cir. 2017).

**2**

Restitullo's second Rule 403 challenge relates to the admission of the second of two videos showing images of child pornography. He contends that the District Court abused its discretion by finding that the second video was not cumulative and not unduly prejudicial. Restitullo's contentions are both incorrect.

First, the second video was not cumulative of the first. The government wanted to show the jury two videos from Restitullo's large collection. The District Court found that the second video was not cumulative of the first one, explaining that the two videos were "representative of what the government ha[d] to demonstrate to the satisfaction of the jury." A106. When responding to Restitullo's objection, the government noted that it

10

"ha[d] been as judicious as [it] c[ould] be with respect to the possession [of child pornography] count." A104. The government looked to introduce "one picture or one video from each of [Restitullo's] different [electronic-storage] devices and beyond that simply rely[ ] on Agent Doyle's testimony." *Id.* Because the District Court admitted only a limited number of videos here, it did not abuse its discretion.

Restitullo insists that our decision in *United States v. Cunningham* supports his argument. But his reliance on *Cunningham* is misplaced. In *Cunningham*, we found that among the seven clips proffered by the government, two of them were cumulative and thus unduly prejudicial. 694 F.3d 372, 390–91 (3d Cir. 2012). Here, the government sought to present the jury with just two brief videos out of Restitullo's collection of 354 videos. The government even took *Cunningham* into account when it decided which videos it would publish to the jury. Thus, Restitullo's argument based on *Cunningham* fails.

As for the undue prejudice argument, the government declined to show the jury any graphic scenes from the second video that involved the child. It also chose to shorten the length of that video. The government agreed to show the jury a total of, at most, 72 seconds of video clips. Based on the government's averment about the video's edited content, the District Court admitted the video. The District Court also explained that "as far as [child pornography] being notorious and inflammatory content, unfortunately … child pornography itself, per se, may well be considered inflammatory. But[ it is] not unfairly inflammatory because someone produced it and someone viewed it and that someone is being charged with having done what he did in this case." A106. Given the

11

short duration of the video clips shown to the jury, we cannot conclude that the District Court abused its discretion by finding that the second video did not unfairly prejudice Restitullo. *See Finley*, 726 F.3d at 493–94.

## C[4]

Finally, Restitullo contends that the District Court's restitution award was excessive. We review the amount of a restitution award either for abuse of discretion, *United States v. Bryant*, 655 F.3d 232, 253 (3d Cir. 2011), or for clear error, *United States v. Akande*, 200 F.3d 136, 138 (3d Cir. 1999). We will affirm under both standards.[5]

---

[4] The government submitted a letter complaining that Restitullo failed to file a notice of appeal of the District Court's restitution order. For that reason, the government urges us to dismiss Restitullo's restitution argument for want of jurisdiction.

   Under 18 U.S.C. § 3742(a), a defendant may appeal a sentence after a district court imposes that sentence. And under the Federal Rules of Appellate Procedure, a defendant in a criminal case must file a notice of appeal within 14 days of "the entry of … the order being appealed[.]" Fed. R. App. P. 4(b)(1)(A)(i). In *Manrique v. United States*, the Supreme Court held that "[t]he requirement that a defendant file a timely notice of appeal from an amended judgment imposing restitution is at least a *mandatory claim-processing rule*." 137 S. Ct. 1266, 1271 (2017) (emphasis added) (citation omitted). But "[u]nlike jurisdictional rules, mandatory claim-processing rules may be forfeited if the party asserting the rule waits too long to raise the point." *Id.* at 1272 (internal quotation marks and citations omitted).

   The government waited nearly two months after Restitullo filed his reply brief, more than four months after Restitullo submitted his opening brief, and more than a year and a half after the District Court entered the restitution order to raise the issue. In its letter, the government says that it waited all this time because it "inadvertently overlooked" the argument. But the Supreme Court has found that waiting six months is too long to raise a claim-processing issue. *See Eberhart v. United States*, 546 U.S. 12, 13, 19 (2005) (per curiam). Because of its delay, the government forfeited this argument.

[5] The government contends that Restitullo failed to preserve his argument about the restitution award. When "a defendant has failed to object to a purported error before the sentencing court, our review on appeal is only to ensure that plain error was not committed." *United States v. Knight*, 266 F.3d 203, 206 (3d Cir. 2001) (citation omitted). We will not address the argument because we will affirm the restitution amount under either standard.

18 U.S.C. § 2259 requires restitution for victims of child pornography-related crimes, including Restitullo's victims. The language of § 2259(b)(4) "indicates Congress'[s] clear intent that victims of child pornography be compensated by the perpetrators who contributed to their anguish." *Paroline v. United States*, 572 U.S. 434, 457 (2014). The restitution award should "spread payment among a larger number of offenders in amounts" based on each defendant's "causal role[ ] and [his] own circumstances." *Id.* at 462.

In *Paroline*, the Supreme Court stated that determining the proper amount of restitution "involves the use of discretion and sound judgment." *Id.* at 459. The Supreme Court also articulated factors that a district court may follow when setting the amount of restitution. *Id.* at 459–60. The factors include:

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* at 460. The "factors need not be converted into a rigid formula, especially if doing so would result in *trivial restitution orders*. They should rather serve *as rough guideposts* for determining an amount that fits the offense." *Id.* (emphasis added).

13

The District Court neither abused its discretion nor committed clear error when it set the restitution amount. The government provided to the District Court a thorough memorandum in support of its proposed restitution amount. The memorandum detailed *Paroline*'s guidance. It also considered the *Paroline* factors and arrived at a proposed restitution amount: $9,000 for each victim, except for Restitullo's niece, who was treated differently.[6] In the end, the government sought a total award of $162,000 to eighteen victims other than Restitullo's niece. The District Court adopted the government's proposal, "based upon the memorandum" that the government submitted. Regarding the $162,000 award, the District Court held that for "those [victims] who will be plagued by exposure, I think [$]9,000 per person is appropriate[ ] relative to the injuries." A166.

The formula suggested by the government and adopted by the District Court did not lead to an excessive or arbitrary award. Other courts of appeals have affirmed similar awards. *See, e.g.*, *United States v. Rothenberg*, 923 F.3d 1309, 1313, 1335–40 (11th Cir. 2019) (declining to vacate awards of more than $10,000 per victim while also vacating $42,600 award); *United States v. Halverson*, 897 F.3d 645, 650 n.1, 653 (5th Cir. 2018) (finding no error in awards of more than $10,000 per victim); *United States v. Sainz*, 827 F.3d 602, 605 (7th Cir. 2016) (finding no error in a $8,387.43 award to a victim).[7] So we

---

[6] Restitullo did not challenge the restitution amount awarded to his niece in this appeal.
[7] Restitullo complains that the restitution award is nearly triple the award imposed in other cases. He asserts that many awards range between $2,000 and $4,000 per victim. But the Supreme Court stated in *Paroline* that discerning the restitution amount "involves the use of discretion and sound judgment." 572 U.S. at 459. That the District Court imposed an above-average restitution award does not mean that the District Court abused its discretion or committed clear error. So Restitullo's argument fails.

14

cannot say that the award is an abuse of discretion. Nor can we say that the District Court committed clear error.

Restitullo advances two other arguments, but neither is persuasive. First, he complains that the District Court should not have used a mathematical formula. It is true that the Supreme Court in *Paroline* declined to prescribe a precise algorithm or formula. 572 U.S. at 459–60. But the decision not to create a formula does not imply that the Supreme Court banned district courts from using one because "[d]oing so would unduly constrain the decisionmakers closest to the facts of any given case." *Id.* at 460. Thus, the District Court did not err by using a formula to calculate the restitution amount.

Second, Restitullo contends that the District Court failed to consider all the *Paroline* factors. But the *Paroline* "factors need not be converted into a rigid formula[.]" *Id.* at 460. Instead, the factors "serve as rough guideposts." *Id.* On this basis alone, Restitullo's second argument fails. Accordingly, we will affirm the restitution amount set by the District Court.

*****

For the reasons stated above, we reject all four of Restitullo's arguments. We will affirm the District Court.

15